BRUCE E.M., Husband, Petitioner
Below, Appellant/Cross-Appellee,

v.

DOROTHEA A.M., Wife, Respondent
Below, Appellee/Cross-Appellant.

Supreme Court of Delaware.

Submitted: Oct. 18, 1982.

Decided: Jan. 11, 1983.

David Roeberg (argued), and Frederick T. Haase, Jr., Roeberg & Associates, P.A., Wilmington, for appellee/cross-appellant.

Before HERRMANN, C.J., HORSEY and MOORE, JJ.

MOORE, Justice:

The husband appeals from a judgment of the Family Court granting his wife a final decree of divorce on her counterclaim. He contends that the Family Court lacked personal jurisdiction over him. We disagree and affirm. The wife cross-appeals from portions of the same order dismissing the husband's divorce petition allegedly for want of prosecution. According to the wife, this dismissal had the effect of limiting her alimony rights due to the court's incorrect perception of her status as a counterclaimant. We agree and reverse that part of the Family Court order.

I.

The facts pertinent to our decision are somewhat convoluted, having been made so, at least in critical part, by certain improper legal tactics of the husband. The parties were married in 1966 and lived in Pennsylvania until they separated in April 1977. The wife remained a Pennsylvania resident, but the husband then moved to Delaware, apparently living in motels. In May 1978 he occupied an apartment north of Wilmington, where he lived when he filed his original divorce petition on March 22, 1979. That pleading, verified as required by Delaware law, stated that the husband had been a resident of Delaware since May 1978.[1] The ground for divorce was the irretrievable breakdown of the marriage based on incompatibility of the parties.

The wife denied all allegations of the petition and requested interim and perma-

David Clayton Carrad, Wilmington, for appellant/cross-appellee.

1. As required by 13 *Del.C.* § 1504, either a petitioner for divorce or the respondent must be a resident of this state. That statute provides in pertinent part:

(a) The Family Court of the State has jurisdiction over all actions for divorce and annulment of marriage where either petitioner or respondent, at the time the action was commenced, actually resided in this State, ...

continuously for 6 or more months immediately preceding the commencement of the action.

The divorce petition must contain an averment, made under oath, of residency, as required by 13 *Del.C.* § 1507(b):

(b) The petition shall be verified by petitioner and shall set forth:

nent alimony if the husband's petition for divorce was granted. Less than a week before the scheduled hearing on the husband's petition, he moved to formally dismiss it, not for any purposes of attempting to effect a reconciliation, but to avail himself of what he perceived to be a less onerous alimony statute that had been enacted since his petition was filed. By its terms the new law was not applicable to the husband's pending suit for divorce. The wife opposed this motion, but before the Family Court decided it the husband filed a second petition for divorce in a further attempt to take advantage of the change in the alimony law.[2] Again, he swore under oath that he was a Delaware resident.

The Family Court denied the husband's motion to dismiss his first petition, holding that dismissal would prejudice the alimony rights of the wife and contravene public policy. We affirmed that decision. *Husband (B.E.M.) v. Wife (D.A.M.)*, Del.Supr., 428 A.2d 1148 (1981), aff'g, *H.C.M. v. E.W.M.*, Del.Fam., 413 A.2d 1271 (1980).

The trial court noted in *H.C.M.* that if either party failed to apply for a hearing

1) The age, occupation and residence (including county in Delaware) of each party and length of residence in the State, showing compliance with the jurisdictional requirements of subsection (a) of § 1504 of this title. . . .

**2.** When husband's first petition was filed, Delaware law did not limit the allowance of alimony to a specified period of time following entry of a divorce decree. 59 Del.Laws, c. 350, § 1 (1974), codified at 13 *Del.C.* § 1512(b) ("The alimony order shall be in such amounts and for such periods of time as the Court deems just, without regard to marital misconduct, and after considering all relevant factors. . . .") When the husband moved to dismiss the petition, § 1512 had been amended to limit the availability of alimony in cases of marriages of less than 20 years to a period of not more than two years after dissolution of the marriage:

(a) The Court may grant alimony for a dependent party as follows:

(1) Temporary alimony for either party during the pendency of an action for divorce or annulment;

(2) Alimony for a respondent commencing after the entry of a decree dissolving an irre-

within one year of its decision, the husband's original petition would be dismissed for want of prosecution pursuant to Family Court Rule 466.[3] *H.C.M.*, 413 A.2d at 1275. The wife filed a timely request for a hearing on husband's original petition, and amended her answer to the original petition by asserting a counterclaim for divorce. Because the wife was a Pennsylvania resident, jurisdiction of her counterclaim could only be founded upon the husband's Delaware residence. The husband's reply to the counterclaim denied all its allegations, including his Delaware residency. This was done despite his two previously sworn divorce petitions to the contrary.

At trial the husband declined to proceed on his original petition. Quite properly, the Family Court heard evidence on the wife's counterclaim and entered a decree of divorce thereon.

## II.

### A.

Relying on *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, Del.Supr., 402 A.2d 1202

trievably broken marriage characterized by mental illness; or

(3) Alimony for a petitioner, or for a respondent who does not qualify for alimony under paragraph (2) of this subsection, commencing after the entry of a decree of divorce or annulment but not to continue for more than 2 years after marriage dissolution unless the parties were married for more than 20 years.

62 Del.Laws, c. 168, § 2, codified at 13 *Del.C.* § 1512(a).

**3.** Family Court Rule 466 provides:

Where an action has been pending for more than 1 year without any proceedings having been taken therein during that year, the Clerk of the Court shall mail to the parties a notice that the action will be dismissed by the Court for want of prosecution if no proceedings are taken therein within 30 days. If no proceedings are taken therein within 30 days after the mailing of such notice, the action shall be dismissed by the Court as of course for want of prosecution. An action may also be dismissed for want of prosecution on motion of any party or by the Court on its own motion.

(1979) and *G.A. Van L. v. P.E. Van L.,* Del.Fam., 415 A.2d 519 (1980), the husband contends that his two previous oaths averring his Delaware residency and his trial testimony are insufficient to establish personal jurisdiction over him on the wife's counterclaim. The wife responds that he is estopped by virtue of his sworn claims of residence plus his testimony at trial from arguing that there is insufficient evidence to support a finding of domicile. Moreover, the wife asserts that whether or not her former husband is estopped, she has satisfied her burden of proof on this issue.

### B.

■ In *Wife (J.F.V.),* this Court rejected a "laundry list" approach to determining domicile and reaffirmed the use of a "deep roots" analysis. 402 A.2d at 1203. *See Fritz v. Fritz,* Del.Supr., 187 A.2d 348 (1962). Establishment of a Delaware domicile requires a person to actually abandon his previous residence with no intention of returning, coupled with the further intent of making Delaware a permanent home. But *Wife (J.F.V.)* makes clear that no one factor is dispositive on this subject. Instead, "the totality of circumstances [must] clearly [show] an integration into the chosen locale of residency, making it advantageous to remain and disadvantageous to leave...." *Wife (J.F.V.),* 402 A.2d at 1204.

■ In the first instance a determination of domicile depends on the evidence presented to the Family Court and turns upon the inferences and deductions that are drawn therefrom. But to hold that a certain factual situation always supports a finding of domicile (or the contrary) not only negates the role of a Family Court judge as trier of fact, but leads back to a "laundry list" analysis of domicile, a result clearly foreclosed by *Wife (J.F.V.).*

■ *Wife (J.F.V.)* re-asserts the scope of review announced in *Levitt v. Bouvier,* Del. Supr., 287 A.2d 671, 673 (1972) [see 402 A.2d at 1204], and that controls the result here. There was sufficient evidence to support the finding of the trial judge. Moreover, his determination of facts turns on a question of credibility and the acceptance or rejection of "live" testimony. His findings are the obvious product of an orderly and logical deductive process, and we cannot say that they are clearly erroneous.

### C.

■ The evidence before the trial judge consisted of the husband's testimony and his two petitions for divorce which flatly swore to his Delaware residence. It is true that a party may assert contradictory positions in the same case or in a separate and distinct cause if he is acting in good faith and res judicata or collateral estoppel does not bar the assertion. *See Continental Insurance Co. of New York v. Sherman,* 439 F.2d 1294 (5th Cir.1971); *Nancy Ann Storybook Dolls, Inc. v. Dollcraft Co.,* 197 F.2d 293 (9th Cir.1952). However, as a general rule the averments of a party in one action, as well as pleadings which have been superseded by amendment, withdrawn, or dismissed, may be taken as admissions against the interest of the pleading party with respect to the facts alleged therein. *Contractor Utility Sales Co., Inc. v. Certain-Teed Products Corp.,* 638 F.2d 1061, 1084 (7th Cir.1981); *Frederic P. Wiedersum Assoc. v. National Homes Construction Corp.,* 540 F.2d 62, 65 (2d Cir.1976); *Continental Insurance Co.,* 439 F.2d at 1298; *Raulie v. United States,* 400 F.2d 487, 526 (10th Cir. 1968).

■ A verified pleading may also be used as an affidavit if the facts stated therein are true to the party's own knowledge. 2A Moore's Federal Practice ¶ 11.04, at 11–13 (1982 ed.); 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1335, at 508 (1969). In the face of the husband's sworn allegations of jurisdiction in his two divorce petitions, the trial judge could very properly view his later denials as inconsistent statements of the most obvious sort. *See* Del.R.Evid. 613.

We also believe that the husband's disavowal of his Delaware residence was of no permissible defensive significance. His wife's counterclaim incorporated by reference his earlier sworn allegation of Delaware residency. Without any apparent regard for or understanding of Superior Court Civil Rules 8(e)(2) and 11, which are similar to the Federal Rules of Civil Procedure, the husband filed a general denial of all allegations in the counterclaim, including that of his residence.[4] A general denial is permissible under Superior Court Civil Rule 8(b),[5] but "a party may not use this form of denial unless he intends to controvert the entire complaint including the averment of the grounds upon which the court's jurisdiction depends," which is a rare situation. 5 Wright & Miller, *supra*, § 1265, at 282. *See* 2A Moore's Federal Practice, *supra*, ¶ 8.23, at 8–235 n. 1, 8–236. The party and his counsel who use a general denial also are subject to the obligations of honesty and good faith established by Superior Court Civil Rule 11. Furthermore, Rule 8(b) expressly reminds counsel of that obligation in order to discourage cavalier pleadings of the type now before us.

The husband initiated these proceedings and twice invoked the jurisdiction of the Family Court by his unqualified allegations under oath that he resided in Delaware. The wife's counterclaim for divorce quite properly relied on the integrity of these allegations mandated by our legislature. It follows that the husband's general denial of his own sworn statements, which were absolutely essential to his invocation of Delaware's divorce laws, fell far short of the obligation of honesty and good faith mandated by Rule 11 and as incorporated in Rule 8(b).

This situation is quite distinct from that in *H.C.M. v. E.W.M.,* 413 A.2d at 1273, where respondent wives opposed the di-

---

4. Superior Court Civil Rule 8(e)(2) provides:

    A party may set forth 2 or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When 2 or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he has regardless of consistency. All statements shall be made subject to the obligations set forth in Rule 11.

    Civil Rule 11 provides:

    Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading and state his address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a pleading is not signed or is signed with intent to defeat the purpose of this Rule, it may be stricken as sham and false and the action may proceed as though the pleading had not been served. For a wilful violation of this Rule an attorney may be subjected to appropriate dis-

    ciplinary action. Similar action may be taken if scandalous or indecent matter is inserted.

    Under 13 *Del.C.* § 1522(a) the procedural rules of the Superior Court, which are virtually identical to the Federal Rules of Civil Procedure, control:

    All parties to any of the proceedings brought pursuant to this chapter shall possess all the procedural rights which those parties would have heretofore possessed in any of the proceedings brought pursuant to this chapter in the Superior Court of this State . . .

    There is, however, one very significant exception. Statutory requirements as to pleadings in the Family Court always prevail. 13 *Del.C.* § 1504(b) states:

    (b) The procedure in divorce and annulment shall conform to the rules of the Court where the same do not contravene this title.

5. Superior Court Civil Rule 8(b) provides in pertinent part:

    * * * Unless the pleader intends in good faith to controvert all the averments of the preceding pleading, he may make his denials as specific denials of designated averments or paragraphs, or he may generally deny all the averments except such designated averments or paragraphs as he expressly admits; but, when he does so intend to controvert all its averments, he may do so by general denial subject to the obligations set forth in Rule 11.

vorces sought by their husbands and alternatively sought alimony if the divorces nonetheless were granted. The wives did not file the actions, and clearly they were unwilling participants in judicial proceedings brought against them by their husbands. No aspect of Delaware law suggests that they were estopped from both defending against the divorce actions and seeking the alternative relief of alimony if they lost.

Here, we have something very different. The husband has invoked the jurisdiction of the Family Court. While its rules of pleading are generally those of the Superior Court, there is one critical distinction. To gain entrance to the Superior Court a plaintiff need not be a Delaware resident, but since the wife lived in Pennsylvania, the husband's Delaware residence was an absolute essential to him as a divorce petitioner. This is not a rule of pleading, but a clear statutory mandate which may not be circumvented by what the husband did here. 13 *Del.C.* §§ 1504(b) and 1507(b)(1). To permit him to seek the jurisdiction of the Family Court by twice swearing to his residency, and then to renounce his two solemn oaths under the guise of an "alternative" pleading, is to say that a litigant may disregard the clearest of statutory pronouncements on the subject and render them a nullity at will. No person has any such right under our law.

Not only does this raise very serious questions of legal propriety [Super.Ct.Civ.R. 11; DR 7–102(A)], but also whether perjury has occurred in our courts. *See* 11 *Del.C.* §§ 1221–35. At a minimum the husband's conduct has the appearance of an attempt to pervert the statutory law and judicial processes of this State. Such activities have no place in the courts of Delaware and will not be countenanced.

■ It is true, as wife argues, that a court may refuse to allow a party to assert a contradictory position in the same or separate action if the court believes that the litigant is not acting in good faith or that the party's procedural posture would lead to an inequitable result. *E.g.,* 5 Wright & Miller, *supra,* § 1283, at 377; 28 Am.Jur.2d *Estoppel & Waiver* § 70 (1966). *See id.* at § 74. But the husband's inconsistent jurisdictional pleading should not be confused with that situation. A court can not acquire subject matter jurisdiction by estoppel, especially when the court is one created by statute and has limited jurisdiction, as in the case of the Family Court. *E.g., Gahn v. Gahn,* 49 Del. 368, 116 A.2d 902, 905 (1955); 20 Am.Jur.2d *Courts* § 95, at 455–56 (1965); 28 Am.Jur.2d *Estoppel and Waiver* § 73, at 704, 705. While the trial judge refused to give conclusive effect to the oaths of residency contained in the husband's two divorce petitions and his denial of residency in reply to the wife's counterclaim, we conclude that the trial judge correctly viewed those statements as evidence on the issue of jurisdiction, and we find no error in his decision. *Levitt v. Bouvier,* 287 A.2d at 673.

The wife only had to establish by a preponderance of the evidence that her husband was domiciled in Delaware. Family Court Rule 220(d). He presented nothing to the contrary, apparently relying on the thoroughly questionable denial of his residency in reply to the wife's counterclaim. The trial judge had the advantage of observing and hearing the witnesses before making his findings. It is apparent that the legal tactics employed here destroyed any semblance of credibility the husband may have had, and we entertain no doubt that the trial judge's conclusions fully meet the tests of judicial review established by *Levitt,* 287 A.2d at 673. Accordingly, we affirm.

## III.

### A.

■ In deciding the wife's alimony claims we are dealing solely with issues of law. The award of alimony in a divorce action is governed by 13 *Del.C.* § 1512. When the husband filed his original divorce petition, § 1512 did not restrict the allow-

ance of alimony to a specific period of time following the entry of a divorce decree.[6] 59 Del.Laws, c. 350, § 1. In addition, the General Assembly had expressed its intent that except for temporary alimony to assist a party to achieve independent financial status, alimony should not be awarded to a divorce petitioner whose action by its very nature sought to reject the respondent as a spouse. 61 Del.Laws, c. 204 [codified at 13 *Del.C.* § 1502(7)]. Section 1512 was subsequently amended to limit the availability of alimony in cases of marriages of less than 20 years to a period of not more than two years after dissolution of the marriage.[7] 62 Del.Laws, c. 168, § 2. A corresponding change was made in the legislative statement of intent, removing the "rejected spouse" concept as a bar to alimony. *Id.* [repealing 13 *Del.C.* § 1502(7)].[8]

The amendments took effect on August 12, 1979. 62 Del.Laws, c. 168, § 4. The husband attempted to take advantage of this statutory change by moving to dismiss his first divorce petition in late July 1979 and filing a new petition for divorce on August 16, 1979. *Husband (B.E.M.) v. Wife (D.A.M.),* Del.Supr., 428 A.2d 1148, 1149–50 (1981), aff'g, *H.C.M. v. E.W.M.,* Del.Fam., 413 A.2d 1271 (1980). The Family Court refused to dismiss the first petition, and we affirmed. *Husband (B.E.M.), supra.*

At the hearing on the petition and counterclaim, and for the obvious tactical reasons discussed, the husband declined to prosecute his action. Relying on 13 *Del.C.* § 1522(a), which gives a Family Court litigant the "right to institute and return complete control of the suit", and Family Court Rule 466, empowering the court to dismiss a case for want of prosecution,[9] the trial judge dismissed the husband's original petition and heard evidence on his wife's counterclaim. Because a decree of divorce was entered on the counterclaim, the judge held that the wife was a petitioner for purposes of determining her alimony rights under sections 1502(7) and 1512, and, therefore, she was not entitled to an indefinite award.

In her cross-appeal the wife now argues that the Family Court improperly dismissed her former husband's petition, thus permitting him to indirectly subvert her rights to indefinite alimony, a result the husband could not obtain through direct dismissal of his own petition. *Husband (B.E.M.), supra.* Since the husband initiated the divorce proceedings by filing his petition first, and thereby rejected her as a spouse, the intent of the statute appears clear that she remained a respondent for purposes of alimony.

The husband argues that he could not be compelled to prosecute his initial petition to its conclusion, since that would frustrate his right to institute and return control of the suit, as provided in 13 *Del.C.* § 1522(a). He also says that while there is no precise definition of "petitioner" or "respondent" in the statutes, the obvious intent is to classify as a respondent someone who was the subject of a divorce decree obtained through the efforts of the other party. Because the wife clearly sought the divorce on her counterclaim, and thereby rejected him as a spouse, he contends that she does not qualify for permanent alimony.

### B.

Former 13 *Del.C.* § 1502(7) stated that except for awards of temporary alimony, an underlying purpose of the law was to deny alimony to a divorce petitioner who thereby rejected the respondent as a spouse. Apparently, this was intended to ensure that the party seeking to end a marriage, and

6. See note 2, *supra.*

7. See note 2, *supra.*

8. Prior to its repeal, 13 *Del.C.* § 1502(7) read:
   This chapter shall be liberally construed and applied to promote its underlying purposes, which are:

* * * * * *

(7) Except as provided in § 1518(h) of this title, not to award alimony to petitioners who seek divorce for any reason and reject the respondent as a spouse.

9. See note 3, *supra.*

perhaps leave a destitute spouse in the wake of a divorce, had no financial incentive for doing so. Here, the rejection of the wife is evident, since it was the husband who moved out of the marital home, first filed for divorce, and generally sought to end the marriage. The wife only filed her counterclaim and presented evidence in support thereof when it was apparent that her husband, motivated by gamesmanship rather than any desire for reconciliation, intended to let his original petition die solely for tactical reasons. Unless the counterclaim was filed and prosecuted, the wife's alimony rights, created by the husband's petition and assured by applicable statutory law, would have been defeated. *Husband (B.E. M.)*, 428 A.2d at 1150.[10] In light of this conclusion it cannot be said that the husband's tactics lie within the scope of the legislative intent to limit alimony, and the trial court erred in permitting the hus-

band's abuse of court procedures to achieve that result. We therefore reverse the judgment of the Family Court denying the right of the wife to seek an alimony award as a respondent under the terms of 13 *Del.C.* §§ 1502(7) and 1512 in effect at the time the original petition was filed on March 22, 1979. The matter will be remanded to the Family Court for further proceedings consistent herewith, including an award of reasonable counsel fees to the wife.

\* \* \* \* \* \*

AFFIRMED IN PART, REVERSED IN PART.

10. The Family Court's divorce jurisdiction was granted it to provide litigants with a forum in which emotionally charged issues could be resolved under the least disruptive and most efficacious conditions. Instead, what we observe here is a veritable minefield of practices, which can trap and ensnare the unwary. No such pitfalls abound in any other Delaware court, and we urge the Family Court to be especially alert to the development of highly estoeric tactics or practices at is bar that subvert its very special and unique jurisdiction to the detriment of the court, the public and the bar in general.